LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
William Brown (WB 6828)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HERMELINDO TENDILLA, RENE SANTIAGO,
and NAPOLEON BRAVO HERRERO,
*on behalf of themselves, FLSA Collective Plaintiffs*
*and the Class,*

       Plaintiff,

          v.

PEARLSTONE RESTAURANT, LLC
d/b/a ULYSSES FOLK HOUSE,
ONE HANOVER, LLC d/b/a HARRY'S NYC,
PETER POULAKAKOS, HARRY POULAKAKOS,
IVAN MITANKIN, MICHAEL DUFFY,
PAUL LAMAS, FRANK CASANO, DANIEL
MCDONALD, TONY VEBER, and SANTIAGO [LNU]

       Defendants.

---

Case No.:

**CLASS AND**
**COLLECTIVE ACTION**
**COMPLAINT**

Jury Trial Demanded

      Plaintiffs, HERMELINDO TENDILLA, RENE SANTIAGO, and NAPOLEON

BRAVO HERRERO ("Plaintiffs"), on behalf of themselves and others similarly situated,

by and through their undersigned attorneys, hereby files this class and collective action

Complaint against Defendants, PEARLSTONE RESTAURANT, LLC d/b/a ULYSSES

FOLK HOUSE, ONE HANOVER, LLC d/b/a HARRY'S NYC (the "Corporate Defendants"), PETER POULAKAKOS, HARRY POULAKAKOS, IVAN MITANKIN, MICHAEL DUFFY, PAUL LAMAS, FRANK CASANO, DANIEL MCDONALD, TONY VEBER and SANTIAGO [LNU] (the "Individual Defendants" and collectively with the Corporate Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages due to invalid tip credit and invalid meal credit, (2) unpaid wages due to time shaving, (3) unpaid overtime, (4) unlawfully retained gratuities, (5) liquidated damages and (6) attorneys' fees and costs.

2.    Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he is entitled to recover from Defendants: (1) unpaid minimum wages due to invalid tip credit and invalid meal credit, (2) unpaid wages due to time shaving, (3) unpaid overtime, (4) unpaid spread of hours premiums (5) unlawfully retained gratuities, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.    Plaintiff HERMELINDO TENDILLA further alleges, pursuant to New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"), that he was deprived of his statutory rights as a result of Defendants' discriminatory employment practices and seeks to recover (1) economic damages, (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.    Plaintiff is a resident of New York County, New York pursuant to 28 U.S.C. § 1391.

7.    PEARLSTONE RESTAURANT, LLC d/b/a ULYSSES FOLK HOUSE  is a domestic limited liability company organized under the laws of the State of New York, with a principal executive office and address for service of process located at 95 PEARL STREET, NEW YORK, NEW YORK 10004.

8.    ONE HANOVER, LLC d/b/a HARRY'S NYC is a domestic limited liability company organized under the laws of the State of New York, with a principal executive office and address for service of process located at 1 HANOVER SQUARE, NEW YORK, NY 10004.

9.    The Corporate Defendants operate as a single integrated enterprise. Specifically, the Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose:

    a) the Corporate Defendants are commonly owned and operated by the Individual Defendants and by the Corporate Defendants;

    b) Harry's NYC and Ulysses Folk House are located on the first and second floor, respectively, of the same building;

c) the Corporate Defendants have the same corporate leadership. Individual Defendants PETER POULAKAKOS, HARRY POULAKAKOS, IVAN MITANKIN, MICHAEL DUFFY, PAUL LAMAS, FRANK CASANO and DANIEL MCDONALD are owners and/or officers of Corporate Defendants, and are in charge of all aspects of management and operations for each of the Corporate Defendants;

d) the Corporate defendants maintain centralized labor relations, human resources, and payroll operations; employment policies and are formulated centrally by senior officials for Corporate Defendants.

e) the Corporate Defendants utilize common payroll operations and maintain identical wage and hour policies; and employees are interchangeable among the Restaurants.

10. PETER POULAKAKOS is an owner of Corporate Defendants. PETER POULAKAKOS exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. PETER POULAKAKOS had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to PETER POULAKAKOS regarding any of the terms of their employment, and PETER POULAKAKOS would have the authority to effect any changes to the quality and terms of employees' employment. PETER POULAKAKOS regularly visited the restaurant and directly reprimanded any employee who did not perform his or her duties correctly. PETER POULAKAKOS ensured that employees

effectively serve customers and that the business is operating efficiently and profitably. PETER POULAKAKOS exercised functional control over the business and financial operations of the Corporate Defendants. PETER POULAKAKOS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

11.    HARRY POULAKAKOS is an owner of Corporate Defendants. HARRY POULAKAKOS exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. HARRY POULAKAKOS had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to HARRY POULAKAKOS regarding any of the terms of their employment, and HARRY POULAKAKOS would have the authority to effect any changes to the quality and terms of employees' employment. HARRY POULAKAKOS regularly visited the restaurant and directly reprimanded any employee who did not perform his or her duties correctly. HARRY POULAKAKOS ensured that employees effectively serve customers and that the business is operating efficiently and profitably. HARRY POULAKAKOS exercised functional control over the business and financial operations of the Corporate Defendants. HARRY POULAKAKOS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

12.    IVAN MITANKIN is an owner of Corporate Defendants. IVAN MITANKIN exercised control over the employment terms and conditions of Plaintiffs,

FLSA Collective Plaintiffs and Class members. IVAN MITANKIN had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to IVAN MITANKIN regarding any of the terms of their employment, and IVAN MITANKIN would have the authority to effect any changes to the quality and terms of employees' employment. IVAN MITANKIN regularly visited the restaurant and directly reprimanded any employee who did not perform his or her duties correctly. IVAN MITANKIN ensured that employees effectively serve customers and that the business is operating efficiently and profitably. IVAN MITANKIN exercised functional control over the business and financial operations of the Corporate Defendants. IVAN MITANKIN had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

13.    MICHAEL DUFFY is an owner of Corporate Defendants. MICHAEL DUFFY exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. MICHAEL DUFFY had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to MICHAEL DUFFY regarding any of the terms of their employment, and MICHAEL DUFFY would have the authority to effect any changes to the quality and terms of employees' employment. MICHAEL DUFFY regularly visited the restaurant and directly reprimanded any employee who did not perform his or her duties correctly.

MICHAEL DUFFY ensured that employees effectively serve customers and that the business is operating efficiently and profitably. MICHAEL DUFFY exercised functional control over the business and financial operations of the Corporate Defendants. MICHAEL DUFFY had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

14. PAUL LAMAS is an owner of Corporate Defendants. PAUL LAMAS exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. PAUL LAMAS had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to PAUL LAMAS regarding any of the terms of their employment, and PAUL LAMAS would have the authority to effect any changes to the quality and terms of employees' employment. PAUL LAMAS regularly visited the restaurant and directly reprimanded any employee who did not perform his or her duties correctly. PAUL LAMAS ensured that employees effectively serve customers and that the business is operating efficiently and profitably. PAUL LAMAS exercised functional control over the business and financial operations of the Corporate Defendants. PAUL LAMAS had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

15. FRANK CASANO is an owner of Corporate Defendants. FRANK CASANO exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. FRANK CASANO had and exercised the power

and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to FRANK CASANO regarding any of the terms of their employment, and FRANK CASANO would have the authority to effect any changes to the quality and terms of employees' employment. FRANK CASANO regularly visited the restaurant and directly reprimanded any employee who did not perform his or her duties correctly. FRANK CASANO ensured that employees effectively serve customers and that the business is operating efficiently and profitably. FRANK CASANO exercised functional control over the business and financial operations of the Corporate Defendants. FRANK CASANO had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

16. DANIEL MCDONALD is an owner of Corporate Defendants. DANIEL MCDONALD exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. DANIEL MCDONALD had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to DANIEL MCDONALD regarding any of the terms of their employment, and DANIEL MCDONALD would have the authority to effect any changes to the quality and terms of employees' employment. DANIEL MCDONALD regularly visited the restaurant and directly reprimanded any employee who did not perform his or her duties correctly. DANIEL MCDONALD ensured that employees effectively serve

customers and that the business is operating efficiently and profitably. DANIEL MCDONALD exercised functional control over the business and financial operations of the Corporate Defendants. DANIEL MCDONALD had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

17. Individual Defendant, TONY VEBER, is the manager of Harry's NYC. TONY VEBER exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. TONY VEBER exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (vi) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to TONY VEBER regarding any of their employment terms, and TONY VEBER would have the authority to affect any changes to the quality and terms of the employees' employment. TONY VEBER ensured that employees effectively serve customers and that the business is operating efficiently and profitably. TONY VEBER controlled the day to day operations of Harry's NYC.

18. Individual Defendant, SANTIAGO [LNU], is the manager of Ulysses Folk House. SANTIAGO [LNU] exercised control over the employment terms and conditions of Plaintiffs, FLSA Collective Plaintiffs and Class members. SANTIAGO [LNU] exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (vi) otherwise affect the quality of employment of Plaintiffs, FLSA Collective Plaintiffs and Class members. At all times, employees could complain to SANTIAGO [LNU] regarding any of their employment terms, and

SANTIAGO [LNU] would have the authority to affect any changes to the quality and terms of the employees' employment. SANTIAGO [LNU] ensured that employees effectively serve customers and that the business is operating efficiently and profitably. SANTIAGO [LNU] controlled the day to day operations of Ulysses Folk House.

19. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA.

20. At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21. Plaintiffs bring claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, cooks, food preparers, butchers, dishwashers, porters, bussers, food runners, bartenders, barbacks and waiters) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein and from January 1, 2014 for Tipped Subclass Members ("FLSA Collective Plaintiffs").

22. At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper overtime wages for all hours worked over 40, failure to pay for all hours worked due to time-shaving, and taking improper meal credits. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

23. Further, with respect to employees who were employed in tipped positions (including, but not limited to, waiters, busboys, bartenders, barbacks and food runners) (the "Tipped Subclass"), Defendants were not entitled to take any tip credits under the FLSA, or to compensate FLSA Collective Plaintiffs at sub-minimum wage base hourly rates, because they failed to satisfy all statutory requirements for taking a tip credit.

24. Because Defendants' claimed tip credits are all invalid, the regular minimum wage rate applies—and has applied—to tipped employees. However, Defendants have been paying the Tipped Subclass at far below the minimum legally allowable rate.

25. Defendants have no valid basis to pay their employees less than the applicable minimum wage rates. Defendants' only possible justification for paying sub-minimum wage rates to the Tipped Subclass would be the use of a valid tip credit, but Defendant cannot legally claim a tip credit because it has not met the requirements to do so.

26. Defendants required Tipped Subclass members to participate in an improper tip pooling scheme, even though they did not consent to such scheme.

27. Furthermore, Defendants engaged in a policy and practice of unlawfully retaining tips earned by Tipped Subclass members.

28. Plaintiffs HERRERO, SANTIAGO, and TENDILLA are all members of the FLSA Collective and Plaintiffs SANTIAGO and TENDILLA are members of the Tipped Subclass.

29. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to

this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

30. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt persons employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein and from January 1, 2014 for Tipped Subclass Members (the "Class Period").

31. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

33. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief which would be sought

by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, (ii) failing to pay overtime premium for hours worked in excess of forty (40) in a workweek, (iii) failing to pay wages due to time-shaving, and (iv) failing to provide Class Members with notice of wage rate upon hiring and proper wage statements with every payment of wages, per requirements of the New York Labor Law.

34.    Further, Defendants failed to pay Tipped Subclass Members the proper minimum wage because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. Plaintiffs SANTIAGO and TENDILLA and the rest of the Tipped Subclass suffered from Defendants' invalid tip credit allowance because Defendants (i) failed to provide notice that a tip credit was being taken against tipped employees' wages, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding two hours or 20% of the total hours worked each workweek, (iii) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period or the proper rate of overtime compensation, (iv) maintained an improper tip pool and misappropriated tips, and (v) failed to accurately keep track of daily tips earned and maintain records thereof, and instead falsely recorded remaining tips after its misappropriation of some tips.

35. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

36. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct

or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d) Whether Defendants properly notified Plaintiffs and the Class members of their hourly rate;

e) Whether Defendants properly provided notice to all tipped employees in their native language that Defendants were taking a tip credit;

f) Whether Defendants provided proper wage statements informing all non-exempt employees information required to be provided on wage statements as required under the New York Labor Law;

g) Whether Defendants provided proper wage and hour notice, at date of hiring and annually, to all non-exempt employees in their native language per requirements of the New York Labor Law;

h) Whether Defendants caused tipped employees to engage in non-tipped duties exceeding two hours or 20% of each workday;

i) Whether Defendants paid Plaintiffs and Class members the proper tip credit minimum wage rate, assuming a tip credit was validly claimed by Defendants;

j) Whether Defendants paid Plaintiffs and Class members the federal and state minimum wage for all hours worked;

k) Whether Defendants paid Plaintiffs and Class members proper overtime compensation; and

l) Whether Defendants paid Plaintiffs and Class members spread of hours for workdays that exceeded ten hours per day.

## STATEMENT OF FACTS

39. Plaintiff HERMELINDO TENDILLA worked at Harry's NYC, located at 1 Hanover Square, New York, NY 10004, as a barback from in or about March 2009 until April 6, 2018. While Plaintiff TENDILLA worked at Harry's NYC, he would deliver food and supplies to Ulysses Folk House.

40. Plaintiff was a plaintiff in the case *Flores v. One Hanover, LLC*, 13-cv-5184 (ALP). A class settlement was reached which covered all claims for Tipped Subclass Members from July 25, 2007 to December 31, 2013. Therefore, Plaintiff TENDILLA, as

well as the Tipped Subclass Members bring claims from January 1, 2014 to the date of the filing of this Complaint.

41. Throughout this period, Plaintiff TENDILLA worked four days per week from Tuesday to Friday. Plaintiff TENDILLA was scheduled to work each day from 6:00 p.m. to 1:30 a.m. However, Plaintiff TENDILLA would usually work more hours than his regularly scheduled shift.

42. Plaintiff TENDILLA was paid $5.00 per hour from in or around February 2014 until December 2016; $7.50 per hour from January 2017 until December 2017; and $8.65 per hour from January 2018 until April 6, 2018. Tipped Subclass members were paid similar rates below the statutory minimum wage.

43. In addition to performing tipped duties, Plaintiff TENDILLA performed substantial non-tipped activities including, but not limited to, cleaning and taking out garbage. Plaintiff would spend well in excess of twenty (20) percent of his workday performing non-tipped activities. Based on Plaintiff's direct observations and conversations with other employees, Tipped Subclass members similarly spent at least twenty (20) percent of their workday performing such non-tipped activities.

44. Plaintiff TENDILLA was required to participate in an illegal tip pooling scheme instituted and mandated by Defendants without his consent. As part of this scheme, Plaintiff TENDILLA received less than 50% of the amount of tips received by bartenders despite performing substantially similar work. Additionally, Defendants impermissibly retained a percentage of Plaintiff's tips. As a result of this system, the amount of tips Plaintiff received on a daily or weekly basis was often so low, that his

wages plus tips were less than the statutory minimum. Therefore, even if the tip credit was otherwise valid, Defendants took an impermissibly excessive tip credit.

45. Plaintiff RENE SANTIAGO worked for Defendants at both Harry's NYC and Ulysses Folk House, as a food runner from in or about December 2017 until April 13, 2018.

46. Throughout his employment, Plaintiff SANTIAGO worked six days per week. Plaintiff SANTIAGO would work both the lunch shift and the dinner shift. The lunch shift was from 10:00 a.m. to 3:00 p.m. and the dinner shift was from 4:00 p.m. to 10:00 p.m. Plaintiff would usually work two lunch shifts and four dinner shifts per week. However, Plaintiff would often work more hours than his regularly scheduled shift.

47. Throughout Plaintiff SANTIAGO's employment with Defendants he would work in both Harry's NYC and Ulysses Folk House, which are located on the first and second floor, respectively, of the same building. Plaintiff SANTIAGO would often work in both restaurants in a single work day. Plaintiff observed that FLSA Collective Plaintiffs and Class Members similarly interchanged between the two restaurants.

48. Plaintiff SANTIAGO was paid $7.50 per hour for the first month of his employment. Starting in January 2018 until April 13, 2018 Plaintiff SANTIAGO was paid $8.65 per hour. Tipped Subclass members were paid similar rates below the statutory minimum wage.

49. In addition to performing tipped duties, Plaintiff SANTIAGO performed substantial non-tipped activities including, but not limited to, washing and preparing vegetables, and cleaning the walls, kitchen, and dining area. Plaintiff would spend well in excess of twenty (20) percent of his workday performing non-tipped activities. Based on

Plaintiff's direct observations and conversations with other employees, Tipped Subclass members similarly spent at least twenty (20) percent of their workday performing such non-tipped activities.

50.    Plaintiff SANTIAGO was required to participate in an illegal tip pooling scheme instituted and mandated by Defendants without his consent.  As part of this scheme Defendants misappropriated a substantial, yet due to Defendants' failure to maintain records of tips, indeterminate proportion of Plaintiff and Tipped Subclass members' tips.  On a typical week Plaintiff SANTIAGO would only receive around $3.00 to $5.00 in tips.  As a result of this system, the amount of tips Plaintiff received on a daily or weekly basis was so low, that his wages plus tips were less than the statutory minimum. Therefore, even if the tip credit was otherwise valid, Defendants took an impermissibly excessive tip credit.

51.    At all relevant times, Defendants paid Plaintiffs TENDILLA AND SANTIAGO as well as Tipped Subclass members at hourly rates below the standard minimum wage. Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform them that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA, (iv) failed to inform them that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours

exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) failed to accurately track daily tips earned or maintain records thereof, (vii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (viii) failed to provide a proper wage statement with every payment of wages informing Plaintiff and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

52. Plaintiff NAPOLEON BRAVO HERRERO worked at Ulysses Folk House as a salad prep worker from August 28, 2017 until in or around November 2017.

53. Throughout his employment, Plaintiff HERRERO worked six days per week. Plaintiff HERRERO worked from 4:00 p.m. to 12:00 a.m. five days per week, and from 4:00 p.m. to 3:00 a.m. one day per week. Plaintiff was therefore scheduled to work fifty-one (51) hours per week. However, Plaintiff would often work more hours than his regularly scheduled shift. Furthermore, Plaintiff HERRERO was never able to take an uninterrupted meal break.

54. Plaintiff HERRERO was paid $13.00 per hour throughout his employment with Defendants.

55. Throughout Plaintiff HERRERO's employment Defendants would deduct at least three hours from his time sheets each week. As a result Defendants failed to pay Plaintiff for all hours worked, including overtime premiums for those hours. Based on Plaintiff HERRERO's observations and communications with other employees, FLSA Collective Plaintiffs and Class Members were subject to similar time shaving policies.

56. Defendants deducted a meal credit from Plaintiffs, FLSA Collective Plaintiffs and Class members' paychecks. However, on most days Plaintiffs were unable to take

any meal break or eat any food because they were too busy. Furthermore, the food that was provided was insufficient. The meals were generally made up of one or at most two of the four required food groups. Like Plaintiffs, FLSA Collective Plaintiffs and Class Members were regularly subject to an automatic deduction for lunch or dinner even though no meals were effectively provided.

57.    Defendants unlawfully failed to pay the Plaintiff, the FLSA Collective Plaintiffs, and members of the Class the Federal and State minimum wage for all hours worked. Defendants unlawfully failed to pay the Plaintiff, the FLSA Collective Plaintiffs and members of the Class proper overtime for hours worked in excess of forty in a workweek.

58.  Plaintiff and Class members did not receive a wage notice in their native language informing them of their hourly rate of pay at the time of hiring, or after each change in their pay rate. Furthermore Plaintiffs TENDILLA AND SANTIAGO, as well as Tipped Subclass Members did not receive any notice in their native language that Defendants were taking a tip credit.

59.  Defendants failed to provide Plaintiffs and Class Members wage statements with each paycheck as required under the New York Labor Law.

*Discrimination Claims for Plaintiff TENDILLA*

60.  Throughout Plaintiff Tendilla's extended tenue as an employee for Defendants he held the position of barback.

61.  Plaintiff TENDILLA is Hispanic and was born in Mexico. Therefore Plaintiff is a member of a protected class.

62.    Despite his title as barback, Plaintiff performed substantially the same or similar duties as bartenders.   In fact Plaintiff was specifically told by his supervisors and managers to perform bartender duties, namely, taking orders and pouring drinks, which are jobs that traditionally only bartenders perform.

63.    Barbacks earned far less than bartenders at Defendants.   According to the tip pooling scheme devised by Defendants, barbacks earned less than half of the amount of tips bartenders received.

64.   Nearly all of the barbacks who worked with Plaintiff TENDILLA were Hispanic, while none of the bartenders were Hispanic.   Defendants never promoted any Hispanic barbacks, including Plaintiff, to the position of bartender, despite having all of the necessary qualifications for the position.

65.   Furthermore, even though Plaintiff performed the same duties as bartenders he received substantially less in tips.

66.   Upon information and belief, Defendants had a policy and practice of refusing to promote Hispanic barbacks to the position of bartenders without justification, and created policies which resulted in Hispanic employees, such as Plaintiff, being paid substantially less than non-Hispanic employees.

67. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

68. Plaintiffs realleges and reavers Paragraphs 1 through 67 of this class and collective action Complaint as if fully set forth herein.

69. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).   Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

70. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

71. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

72. Defendants willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to pay them for all hours worked due to time shaving, and overtime in the lawful amount for hours worked in excess of forty hours per workweek.

73.   Defendants willfully violated Plaintiffs TENDILLA AND SANTIAGO and Tipped Subclass Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.  Defendants were not entitled to take any tip credits under the FLSA, because they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit.

74. Records, if any, concerning the number of hours worked by Plaintiff and

FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs at the statutory minimum wage rate and overtime rate.

76. Defendants took an improper meal credit from Plaintiffs and FLSA Collective Plaintiffs wages because on most days they were unable to take meal breaks, and because the meals provided were insufficient.

77. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

78. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

79. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages plus an equal amount as liquidated damages.

80. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

81. Plaintiff realleges and reavers Paragraphs 1 through 80 of this class and collective action Complaint as if fully set forth herein.

82. At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

83. Defendants willfully violated Plaintiff's and Class members' rights by failing to pay Plaintiff and Class members for all hours worked due to time shaving, and overtime at a rate of time and a half for hours worked in excess of forty hours per workweek

84. Defendants willfully violated Plaintiffs TENDILLA AND SANTIAGO and Tipped Subclass members' rights by failing to pay minimum wages in the lawful amount for hours worked. Defendants were not entitled to take any tip credits under the NYLL, because they (i) failed to properly provide notice to all tipped employees in their native language that Defendants were taking a tip credit in violation of the NYLL, (ii) failed to provide wage statements that listed the tip credit allowance claimed as part of the minimum wage, and (iii) caused tipped employees to engage in non-tipped duties exceeding 2 hours or 20% of each workday in violation of NYLL.

85. Defendants knowingly and willfully operated their business with a policy of not providing wages statements as required under the New York Labor Law.

86. Defendants knowingly and willfully operated their business with a policy of failing to provide proper wage and hour notices, at the date of hiring and with each change of pay rate, to all non-exempt employees per requirements of the New York

Labor Law.

87. Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants unpaid minimum wages, unpaid overtime, unpaid spread of hours, unpaid call-in pay, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

**COUNT III**

**<u>VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW</u>**

**(NEW YORK EXECUTIVE LAW § 296)**

88.  Plaintiff realleges and reavers Paragraphs 1 through 87 of this class and collective action Complaint as if fully set forth herein.

89.  Plaintiff HERMELINDO TENDILLA is an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employers under the NYSHRL.

90.   Defendants violated Plaintiff HERMELINDO TENDILLA's statutory protected rights under the NYSHRL, New York Executive Law § 296, by discriminating against Plaintiff on the basis of his race, ethnicity, and/or national origin in violation of the NYCHRL, by subjecting him to an intentionally discriminatory policy as set forth above.

91.   Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYSHRL.

92.    As a result of Defendants' unlawful employment practice under the NYSHRL, Plaintiff HERMELINDO TENDILLA sustained injury, including economic damages, past and future emotional distress and the costs of bringing this action.

93.    Due to Defendants' violation under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices described herein; (2) compensatory damages.

## COUNT IV

## <u>VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW</u>

### (NEW YORK CITY ADMINISTRATIVE CODE § 8-107)

94.    Plaintiffs reallege and reaver Paragraphs 1 through 93 of this Class Action Complaint as if fully set forth herein.

95.    Defendants have had at all relevant times herein, at least four (4) persons in their employ. Plaintiff HERMELINDO TENDILLA is an employee and a qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

96.    Defendants violated Plaintiff's statutory protected rights under the NYCHRL, Administrative Code of the City of New York § 8-107, by discriminating against Plaintiff on the basis of his race, ethnicity, and/or national origin in violation of the NYCHRL, by subjecting him to an intentionally discriminatory policy as set forth above.

97.    Defendants' conduct was intentional, malicious, willful or in reckless disregard of Plaintiff's protected rights under the NYCHRL.

98.    As a result of Defendants' unlawful employment practice under the NYCHRL, Plaintiff sustained injury, including economic damages, past and future emotional distress and the costs of bringing this action.

99.    Due to Defendants' violation under the NYCHRL, Plaintiff HERMELINDO TENDILLA is entitled to recover from Defendants: (1) an injunction ordering Defendants to cease its discriminatory practices described herein; (2) back pay; (3) compensatory damages; (4) punitive damages; and (4) attorney's and expert fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

d.    An award of unpaid overtime due under the FLSA and the New York Labor Law;

g.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage and overtime pursuant to 29 U.S.C. § 216;

h.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay minimum wage, and overtime pursuant to the New York Labor Law;

i.      An award of back pay accrued as a result of caused by Defendants' unlawful discriminatory practices under the NYSHRL and NYCHRL;

j.      An award of compensatory damages for physical and emotional suffering as a result of Defendants' unlawful discriminatory practices, under the NYSHRL and NYCHRL;

k.      An award of punitive damages for Defendants' unlawful discriminatory practices under the NYCHRL;

l.      An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

m.      Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

n.      Designation of this action as a class action pursuant to F.R.C.P. 23;

o.      Designation of Plaintiff as a Representative of Class; and

p.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 28, 2018

Respectfully submitted,

By:   */s/ C.K. Lee*                 
    C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
William Brown (WB 6828)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*
C.K. Lee